**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X          **12 Civ. 1078 (DAB)(JCF)**
REBEL ELY,

                                Plaintiff,

               -against-

ROBERT BERNARD PERTHUIS,
WINDOMERE ADVISORS LLC, and
SCOTT-MACON SECURITIES, INC.,

                              Defendants.

--------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


 

**PHILLIPS & PHILLIPS,**
**Attorneys at Law, PLLC**
*Attorneys for Plaintiff*
30 Broad Street, 35th Floor
New York, New York 10004
(212) 248-7431

Plaintiff, REBEL ELY, by and through her attorneys, PHILLIPS & PHILLIPS, Attorneys at Law, PLLC, respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff ELY respectfully submits that Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) must be denied in its entirety as a matter of law because Plaintiff's Complaint sufficiently alleged facts to support her claims.

## RELEVANT FACTS

In or about June 2009, Defendant PERTHUIS and Plaintiff ELY met at the Restaurant "Picante" at 3424 Broadway, New York, NY, where Defendant PERTHUIS and Plaintiff ELY entered into a venture capital partnership agreement. Complaint ¶ 24.

Pursuant to their partnership agreement, Defendant PERTHIUS agreed to raise capital for client companies and Plaintiff ELY agreed to conduct due diligence on each investment, determine the allocation of the investment in each company client, and then help the existing management team execute on that strategy so that they would succeed. Complaint ¶ 25-30.  They agreed that they would each take an equity stake in each client company in return for their investment, as well as a percentage of profits for the various deals that they brought to each client company. Complaint ¶ 30. Defendant PERTHIUS and Plaintiff ELY further agreed that they would evenly split all expenses and profits, each receiving 50%. Complaint ¶ 28.  In addition, Defendant PERTHIUS agreed to pay Plaintiff ELY $10,000 per month for her time and expertise in connection with work for client companies. Complaint ¶ 19.

As such, beginning in or about June 2009, Plaintiff ELY immediately began performing her obligations pursuant to the partnership agreement, including conducting due diligence,

contacting potential investors to evaluate the specific client company investment opportunities, and meeting with management teams trying to position companies to attract capital. Complaint ¶ 22.

In or about September 2009, a Hong Kong-based Goldman Sachs commodities trader by the name of Gene Lovato was working on a sale of gold transaction wherein representatives of the Vatican were selling a large quantity of gold (the "Gold Sale"). Complaint ¶ 32. Defendant PERTHUIS informed Plaintiff ELY that if they (Plaintiff ELY and Defendant PERTHUIS) found a buyer for the Gold Sale, they would be entitled to a 5% commission as a finder's fee on the total Gold Sale. Complaint ¶ 33. Defendant PERTHUIS and Plaintiff ELY agreed that they would work on the Gold Sale together as part of their partnership and that they would split the $60 million commission (or more depending on the price of gold at the time of sale) on a 50/50 basis. Complaint ¶ 35.

As such, from September of 2009 through the end of December of 2009, Plaintiff ELY worked on this Gold Sale. Complaint ¶ 36.  On or about December 22, 2009, the Goldman Sachs employee, Gene Lovato, came to New York from Hong Kong to meet with Plaintiff ELY and Defendant PERTHUIS to discuss the outstanding issues with the Gold Sale. Complaint ¶ 37.

On or about December 23, 2009, Defendant PERTHUIS told Plaintiff ELY that he was going to dinner with Gene Lovato and with Gene Lovato's hedge fund sponsor, Joseph Wolnick. Complaint ¶ 38. Defendant PERTHUIS further told Plaintiff ELY that he did not want Plaintiff ELY to come to the dinner and that he would take care of the meeting himself. Complaint ¶ 39. The next day, Defendant PERTHUIS told Plaintiff ELY, "I don't think there is a reason for us to be in business anymore." Complaint ¶ 40. Plaintiff ELY was understandably shocked and upon questioning Defendant PERTHUIS, Defendant PERTHUIS replied, "I don't want to be partners

with you anymore. Our conversation is at an end." Complaint ¶ 41.

While Plaintiff ELY explained to Defendant PERTHUIS that Defendants owed her money, Defendants failed to pay Plaintiff ELY pursuant to their agreement. Complaint ¶ 42. Plaintiff ELY explained that she had worked in reliance upon and in furtherance of their partnership for approximately seven (7) months, that they agreed that they would split all profits and losses 50/50, that she had made numerous expenditures and sacrifices for the partnership, and that she was entitled to $10,000 per month. Complaint ¶ 42.

To date, Defendants have remained in breach of the partnership agreement by failing to pay Plaintiff ELY any of the profits generated from the Gold Sale as well as failing to pay her the agreed upon $10,000 per month. Complaint ¶ 44-46.

## LEGAL ARGUMENT

### I.      THE APPLICABLE STANDARD OF REVIEW

Federal Rules of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted.  The standard of review on a motion to dismiss is heavily weighted in favor of the Plaintiff. Diaz v. NBC Universal, Inc., 536 F.Supp.2d 337, 341 (S.D.N.Y. 2008).

"A court considering a 12(b)(6) motion must take factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor.  A complaint need not contain detailed factual allegations, but it must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Semper v. New York Methodist Hosp., 2011 WL 1240551, 3 (E.D.N.Y. 2011) (internal citations and quotation marks omitted).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to

determine whether the complaint itself is legally sufficient." <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985).

## II.    SECTION 5-701(A)(10) OF THE NEW YORK STATUTE OF FRAUDS DOES NOT BAR PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT

In her Complaint, Plaintiff ELY alleges that Defendants agreed that in consideration for Plaintiff ELY's work, she would be entitled to a 50% share of all net profits and equity generated by the transactions she and Defendants worked on.  Plaintiff ELY alleges that Defendants have breached that agreement.

Defendants misconstrue G.O.L. § 5-701(a)(10) which bars only oral contracts for payment due to a "finder" or negotiator of a business opportunity.  Defendants contend that this claim must be dismissed because G.O.L. § 5-701(a)(10) requires that any such agreement be in writing.  It is, however, clear as a matter of law that the claim being asserted by Plaintiff falls outside § 5-701(a)(10), which is limited in scope to claims for compensation for services rendered in "negotiating ... a business opportunity."

G.O.L. § 5-701(a)(10) provides that, "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a

contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman."

Accordingly, § 5-701(a)(10) applies only to contracts for services rendered in "negotiating the purchase, sale, exchange . . . of. . . a business opportunity." That is to say, § 5-701(a)(10) relates to claims for a finder's fee for negotiating a transaction, which is defined in the statute as including "procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction." But Plaintiff ELY's contract claim plainly falls outside of this statute. Plaintiff ELY does not claim that she had an agreement to be paid a commission in exchange for her negotiation of a transaction or assistance in the negotiation of a transaction. Rather, she pleads that she and Defendants agreed that she would work for Defendants furthering the business of Defendants.

In short, the claim asserted by Plaintiff ELY for breach of contract is not, as Defendants would have it, a claim for compensation for a finder's fee or for negotiating a business opportunity. As alleged by Plaintiff ELY in her complaint, the parties agreed that Plaintiff ELY would conduct due diligence on each investment, determine the allocation of the investment in each company client, and then help the existing management team execute on that strategy so that they would succeed, and as compensation for those activities, would share in the net profits of the transactions. Whether or not a portion of what Plaintiff ELY did was "negotiating" with respect to some of the transactions (and part of almost any business, especially a financial business, involves negotiating), her claim is for something far different from and far greater than "negotiating . . . a business opportunity" and is not barred by § 5-701(a)(10).

Case law makes this clear. It is well settled that where the plaintiff's functions transcend

the role of serving as an intermediary, and are not limited and transitory, the statute of frauds does not apply. In <u>Lazard Freres & Co. v. First National Bank of Maryland</u>, 238 A.D.2d 273, 274, 656 N.Y.S.2d 874, 875 (1st Dept 1997), defendant moved to dismiss a contract claim based on an alleged oral agreement to pay a residual broker's commission in connection with the leasing of a commercial aircraft for a term of years.  The First Department denied the motion, and held that the claim was not governed by G.O.L. § 5-701(a)(10), because the services contemplated were "clearly not limited and transitory," citing <u>Freedman v. Chemical Constr.</u> <u>Corp.</u>, 43 N.Y.2d 260, 401 N.Y.S.2d 176 (1977).

Similarly, in <u>Super v. Abdelazim</u>, 108 A.D.2d 1040, 485 N.Y.S.2d 612 (3d Dept. 1985), the plaintiff alleged that he and the defendant had entered into an oral agreement pursuant to which plaintiff was to perform all necessary services to find a suitable location and then to act as construction manager in converting a former school building into a medical office complex in exchange for a percentage of the cost of the building.  In denying summary judgment for the defendant, who argued that § 5-701(a)(10) barred the plaintiff's claim, the Court found that the plaintiff's allegations, if believed, established that he was to render a "wide variety of services" and that his function was not limited to "merely negotiating a business opportunity."  Therefore, his claim was "broad enough" to survive the limitations of G.O.L. § 5-701(a)(10). <u>Id</u>. at 1041-42; *see also* <u>Riley v. N.F.S. Services</u>, 891 F. Supp 972, 977 (S.D.N.Y. 1995).

Other courts have ruled that G.O.L. § 5-701(a)(10) does not apply to an oral joint venture agreement, which involves two or more individuals pooling their respective efforts to create and/or operate a business venture as opposed to one person assisting or facilitating another to do so. <u>Richman v. Federated Adjustment Co</u>., 95 A.D.2d 850, 851 (2d Dept. 1983); *see also* <u>F.S.</u> <u>Intertrade Office Products, Inc. v. Babina</u>, 199 A.D.2d 95, 96, 605 N.Y.S.2d 57 (1st Dept. 1993)

(upholding trial court's decision that the oral agreement did not violate G.O.L. § 5-701(a)(10) because it "was more closely akin to that of a joint venture, to which the Statute of Frauds is inapplicable"); Snyder v. Bronfman, 19 Misc. 3d 1126(A), 862 N.Y.S.2d 818, 2008 WL 1883411 (S.Ct. N.Y. Co. 2008) (plaintiff's role in alleged joint venture to acquire companies transcended role of an intermediary; §5-701(a)(10) did not bar claim).

It is thus clear that because the allegations in Plaintiff ELY's Complaint involve a wide range of activities to be performed by Plaintiff ELY that transcend the role of an intermediary and are far more than merely negotiating a business opportunity, Plaintiff ELY's claim for breach of contract falls outside the proscription of § 5-701(a)(10).

Here, based on the facts alleged in the Complaint, which must be accepted as true, and drawing every favorable inference from the allegations, Plaintiff ELY's breach of contract claim falls outside the proscription of G.O.L. § 5-701(a)(10) because Plaintiff ELY engaged in a variety of services for Defendants, thereby transcending the limited role of a mere intermediary that G.O.L. § 5-701(a)(10) is designed to address.

## III.   THE COMPLAINT PROPERLY PLEADS A CLAIM FOR BREACH OF CONTRACT

To plead the elements of a breach of contract claim, a plaintiff must plead that: (1) a contract exists; (2) the non-breaching party gave the requisite performance; (3) the breaching party breached; and (4) there are resulting damages. See WorldCom, Inc. v. Sandoval, 182 Misc. 2d 1021, 1023, 701 N.Y.S.2d 834, 836 (N.Y. Sup. Ct. 1999).

Here, the Complaint properly and sufficiently pleads the elements of a breach of contract claim. As to the first element, the Complaint alleges that the parties entered into an oral agreement at the time Plaintiff ELY commenced her respective consulting services with

Defendants.   The oral agreement governed the terms of their relationship, including Plaintiff

ELY's respective fees/compensation.   The Complaint further alleges that under terms of the oral

agreement, Plaintiff ELY would receive $10,000 per month for her time and expertise, and

significant additional compensation equal to 50% of the revenues received by Defendants on all

matters on which Plaintiff ELY worked.

To the extent that Defendants argue that Plaintiff ELY did not set forth the material terms

of her oral agreement because she did not include the precise calculation of her compensation,

such an argument is in direct contravention to New York law. *See, e.g.,* Guggenheimer, 11 Misc.

3d at 932-33, 810 N.Y.S.2d at 886-87 ("The fact that the precise amount of the bonus to be

awarded was not specified does not make the contract unenforceable. … contracts that contain

open additional compensation clauses are nonetheless binding contracts.").   A determination of

whether there are sufficiently definite guidelines to enable the Court to calculate Plaintiff's

compensation is a factual issue that must be determined at trial. *See* Guggenheimer, 11 Misc. 3d

at 932-33, 810 N.Y.S.2d at 887.

As to the second element of a breach of contract claim, the Complaint alleges that

Plaintiff ELY met with various clients and conducted due diligence on various matters on which

Plaintiff ELY and Defendants were working.   This element of a contract claim has, thus, been

met.  Notice pleading is all that is required.

With respect to the third element of a contract claim, the Complaint plainly alleges that

Defendants breached Plaintiff ELY's oral agreement by failing to pay her what she is owed

under the agreement.   The precise amount of those payments is a matter of damages, which is

left for trial.  There can be no dispute at this juncture that if Plaintiff ELY proves the existence of

the oral agreements alleged in the Complaint, that damages flowing from Defendants' breach of

those agreements will result.

Finally, with respect to the fourth element, Plaintiff ELY has alleged that she suffered damages as a result of Defendants' breach of the oral agreement.  This is sufficient to allege damages, and the precise amount of damages remains an issue of fact for trial.

## IV.   THE COMPLAINT PROPERLY PLEADS A CLAIM FOR UNJUST ENRICHMENT

Equally without basis is Defendants' contention that Plaintiff ELY's claim for unjust enrichment must be dismissed.

To prevail on a claim of unjust enrichment, a party must prove that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered. *See* Snyder v. Bronfman, 2008 WL 1883411, 7 (S.CT. N.Y. Co. 2008); Citibank, N.A. v. Walker, 12 A.D.3d 480, 787 N.Y.S.2d 48 (2d Dept. 2004); Kidz Cloz, Inc. v. Officially for Kids Inc., 320 F.Supp.2d 164, 177 (S.D.N.Y. 2004).

The essence of unjust enrichment is that one party has received money or benefit at expense of another, and that it is against equity and good conscience to permit other party to retain what is sought to be recovered. Guggenheimer v. Bernstein Litowitz Berger & Grossmann LLP, 11 Misc.3d 926, 810 N.Y.S.2d 880 (N.Y.Sup.,2006).  Thus, to state a cause of action for unjust enrichment, Plaintiff ELY *must allege that she conferred a benefit upon Defendants, and that Defendants will obtain such benefit without adequately compensating her*.  Where there is a question as to the adequacy of the compensation that an employee received, and where that employee has not yet received the incentive compensation to which she was otherwise entitled, courts in New York have held that this cannot be properly resolved on a motion to dismiss. *See*

Foster v. Kovner, 44 A.D.3d 23, 29, 840 N.Y.S.2d 328, 333 (1st Dept.,2007).

Defendants argue that this claim is insufficient for a number of reasons.  First, they argue that a claim for unjust enrichment cannot rest on the same allegations as a claim for breach of contract.  Second, they contend that to succeed on a claim for unjust enrichment, Plaintiff ELY must establish that the "writing requirement of the Statute of Frauds" was satisfied.  Defendants argue that because Plaintiff ELY's claim for breach of contract is purportedly barred by § 5-701(a)(10), the claim for unjust enrichment must fail, and Plaintiff ELY may not escape the requirements of the Statute of Frauds by pleading the "quasi-contractual" claim for unjust enrichment, citing Zeising v. Kelly, 152 F.Supp.2d 335 (S.D.N.Y. 2001).   None of these arguments has substance.

Zeising involved a contractual claim for a finder's fee, which the court held was barred by § 5-701(a)(10). Zeising v. Kelly, 152 F.Supp.2d 335 (S.D.N.Y. 2001).  As discussed in the previous section, however, that is not the situation in this case, given that the allegations for breach of contract are far broader than merely negotiating a business opportunity and thus the alleged agreement falls outside of the proscription of § 5-701(a)(10).

Here, Plaintiff ELY conferred a benefit upon Defendants by meeting with various clients and conducting due diligence on various matters, and in the process, earned revenues for Defendants.  Plaintiff ELY performed this work with the understanding that she would be compensated pursuant to the terms of their agreement.  However, Defendants have obtained the benefit of Plaintiff ELY's services without adequately compensating her.  Thus, the inequitable element of the unjust enrichment claim has been clearly pled.

It is also well established that a plaintiff is permitted as a matter of alternative pleading to assert claims on theories of both contract and a quasi-contractual claim such as unjust enrichment

11

where there is a genuine dispute as to the existence of a contract.  The plaintiff is not required to make a pretrial election between those theories. See IIG Capital LLC v. Archipelago LLC, 36 A.D.3d 401, 404-05, 829 N.Y.S.2d 10 (1st Dept. 2007); Curtis Properties Corp. v. The Greif Cos., 236 A.D.2d 237, 239, 653 N.Y.S.2d 569, 571 (1st Dept. 1997) ("a party is not precluded from proceeding on both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract. . . ."); Joseph Sternberg, Inc. v. Walter 36th Street Associates, 187 A.D.2d 225, 228, 594 N.Y.S.2d 144, 146 (1st Dept. 1993); Randall v. Guido, 238 A.D.2d 164, 655 N.Y.S.2d 527 (1st Dept. 1997).  In this case, of course, Defendants dispute the existence of a contract with Plaintiff ELY, who is thus free to plead the quasi-contractual claim for unjust enrichment in the alternative.

Accordingly, the Statute of Frauds does not bar Plaintiff's unjust enrichment claim.


## V.      PLAINTIFF'S CLAIM FOR QUANTUM MERUIT IS LIKEWISE NOT BARRED BY THE STATUTE OF FRAUDS

Defendants also argue that Plaintiff ELY's cause of action for quantum meruit must be dismissed because the Statute of Frauds specifically prohibits an action in quantum meruit to avoid the requirement of a writing.  However, Defendants are incorrect.

Even if a plaintiff fails to prove a valid contract, she still may be able to recover in *quantum meruit* "to assure a just and equitable result.  In order to state a claim in *quantum meruit,* a plaintiff must allege (1) performance of services in good faith; (2) acceptance of these services by the person to whom they are rendered; (3) an expectation of compensation; and (4) the reasonable value of the services." Zeising v. Kelly, 152 F.Supp.2d 335, 344 (S.D.N.Y.,2001)(internal citations and quotations omitted).

Accordingly, Plaintiff ELY has the right to assert a claim for quantum meruit, and may

recover on those claims even if he is unable to prove a valid contract.

## VI.   PLAINTIFF HAS PROPERLY PLEADED A CLAIM FOR PROMISSORY ESTOPPEL

To establish a cause of action sounding in promissory estoppel, a plaintiff must allege (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained in reliance on the injury. *See, e.g.,* Rogers v. Town of Islip, 230 A.D.2d 727, 646 N.Y.S.2d 158 (2d Dept. 1996); Ripples's of Clearview v Le Havre Assoc, 88 A.D.2d 120, 122, 452 N.Y.S.2d 447 (2d Dept. 1982). The Complaint in this case pleads all of these elements.

Defendants argue that notwithstanding the pleading of these elements, Plaintiff ELY's claim for promissory estoppel should be dismissed.   Defendants argue that because the underlying claim is barred by G.O.L. § 5-701(a)(10) -- the Statute of Frauds provision covering agreements to negotiate a business opportunity – Plaintiff ELY's promissory estoppel claim is barred by the Statute of Frauds unless Plaintiff can demonstrate "unconscionable injury," citing United Resource Recovery Corp. v. Ramko Venture Management, Inc., 584 F.Supp.2d 645 (S.D.N.Y.,2008).

That higher standard, however, is not applicable here.   The requirement of showing "unconscionable injury" applies only where the claim of promissory estoppel would otherwise be barred by the Statute of Frauds.   As discussed above, § 5-701(a)(10) does not apply to the claims asserted by Plaintiff ELY, since Plaintiff ELY's allegations involve far more than Plaintiff ELY merely serving as an intermediary, and are not limited and transitory.

Even if the promissory estoppel claim in this case were otherwise barred by §5-

701(a)(10), and Plaintiff ELY was required to show that the injury she sustained as a result of her reliance on Defendants' promises was "unconscionable," that is a matter of proof that cannot be decided on the pleadings.  In United Resource Recovery Corp. v. Ramko Venture Management, Inc, the court held that plaintiff's claim was for a finder's fee, and therefore does not rise to the level of unconscionability.  The claim in this case is not for a finder's fee, and there is no legal basis at this stage of the litigation for a finding as a matter of law that Plaintiff ELY's injury, sustained after devoting seven months of her career in reliance on Defendants' promises, and suffering the loss of many millions of dollars is not unconscionable.

## VII.   THE COMPLAINT PROPERLY PLEADS A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Implicit in all contracts is an obligation of good faith and fair dealing, which provides that no party will do anything to injure the right of another party under the contract. Travellers Intl, A.G. and Windsor. Inc. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994) ("Under New York law, the implied covenant of good faith and fair dealing inheres in every contract."); Carvel Corp. v. Diversified Mgmt. Group, Inc., 930 F.2d 228, 230 (2d Cir. 1991); Andolina Shipping Ltd. v. TBS Eurolines Ltd., 84 F. Supp. 2d 527, 530 (S.D.N.Y. 2000) ("It is well-established that a covenant of good faith and fair dealing is implied in all contracts.").

This implied obligation requires that each party: (i) will not engage in conduct that "has the effect of destroying or injuring the right of the other party to receive the fruits of the contract," M/A-Com Security Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990); and (ii) "will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part." Carvel Corp., 930 F.2d at 230 (citing Grad v. Roberts, 14 N.Y.2d 70, 75, 248 N.Y.S.2d 633, 637 (1964)).

Defendants argue that New York does not recognize an independent cause of action for the breach of the implied covenant of good faith and fair dealing and that the claim is part of the pleaded breach of contract claim.  In actuality, the law is that the claim for breach of the implied covenant is not independent of a valid contract and should not be duplicative of the breach of contract claim.  The claim will be sustained when it is based on different facts than a breach of contract claim. *See* Ari & Co. v. Regent Int'l Corp.*,* 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003).

Plaintiff ELY's claims relating to the breach of the express terms of the oral agreement are not duplicative of her claim relating to the implied terms of the oral agreement.  To the contrary, the claim is based upon separate and distinct allegations – Defendants breached the express terms by refusing to pay Plaintiff ELY her earned fees in the amount of $10,000 per month.  In contrast, Defendants breached their implied obligations by refusing to acknowledge the express terms of the oral agreement, and to-date, has refused to acknowledge that they have, or will soon, receive substantial revenues on account of the work performed by Plaintiff ELY.

## VIII.   PLAINTIFF HAS A RIGHT TO AN ACCOUNTING

As an alleged partner of Defendants, Plaintiff ELY is entitled to an accounting.  As partners, Defendants owe a fiduciary duty to other partners, and those partners have a right to an accounting where, as here, those partners are alleged to have engaged in wrongdoing. See Evans v. Perl, 19 Misc.3d 1119(A), 862 N.Y.S.2d 814, 2008 WL 1735059 at 10 (S.Ct. N.Y. Co. 2008).

## IX.     PLAINTIFF REQUESTS LEAVE TO AMEND ANY CAUSE OF ACTION THAT THIS COURT DEEMS INSUFFICIENTLY PLED

In the unlikely event that this Court finds any merit to any portion of the arguments advanced by Defendants and thereby grants their Motion, Plaintiff ELY should be allowed, and

respectfully requests, the right to re-plead her claims.

## CONCLUSION

For the foregoing reasons, Plaintiff ELY respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety, and order such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 30, 2012

**PHILLIPS & PHILLIPS,**
**ATTORNEYS AT LAW, PLLC**


By:      _____/s/_____
         Marjorie Mesidor, Esq. (MM1978)
         *Attorneys for Plaintiff*
         30 Broad Street, 35th Floor
         New York, New York 10004
         (212) 248-7431

To:    Stewart D. Aaron, Esq.
       James D. Flynn, Esq.
       ARNOLD & PORTER LLP
       Attorneys for Defendants
       399 Park Avenue
       New York, New York 10022
       (212) 715-1000